LACY WRIGHT, JR. et al.,

    Plaintiffs,

v.                        CIVIL ACTION NO. 1:08-1431

JAMES M. SUTTON, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are motions to dismiss the Amended Complaint filed by the remaining defendants. (ECF Nos. 77 and 79). For reasons expressed more fully below, those motions are GRANTED.

## I. Background

On October 27, 2006, plaintiffs filed this civil action, in the Circuit Court of McDowell County, against various defendants alleging that defendants engaged in a "freeze-out" of plaintiff Lacy Wright and other John Doe minority shareholders in American Bankshares, committed fraud, engaged in civil conspiracy, and were negligent. See Complaint generally (ECF No. 1). On September 19, 2008, the Office of Thrift Supervision closed Ameribank, alleged to be a subsidiary of American Bankshares, and appointed the Federal Deposit Insurance Corporation ("FDIC") as Receiver.

On December 17, 2008, the FDIC filed a Motion to Substitute, in the McDowell County Circuit Court, seeking to substitute the

FDIC as Receiver for defendant Ameribank. On that same day, the FDIC removed the case to federal court. On September 29, 2010, the court granted the motion to dismiss filed by the FDIC as Receiver for Ameribank for lack of subject matter jurisdiction based on plaintiffs' failure to exhaust administrative remedies.

On July 6, 2010, the court granted defendant Crowe Chizek and Company, LLC's (hereinafter "Crowe") motion for a more definite statement. In particular, plaintiffs were directed to explain:

> 1) the nature of each claim for relief they are asserting while providing separate counts for each individual claim, 2) any statute or regulation allegedly violated (if applicable), 3) the facts that support each claim, and 4) the relief he seeks for each claim. The amended complaint must also specifically identify which counts are applicable to which defendants. Furthermore, plaintiffs are reminded of Federal Rule of Civil Procedure 12(f) and directed to omit from their more definite statement any impertinent or scandalous matter such as that contained in the last sentences of paragraphs numbered 20 and 21 of the original complaint.

ECF No. 51 at pp. 3-4. Plaintiffs were also warned that failure to comply with the court's Order might result in dismissal of this action without prejudice.

On July 20, 2010, plaintiffs filed a ten-count Amended Complaint. According to the Amended Complaint, plaintiff Lacy Wright "was a loyal and patient stockholder in American Bankshares, Inc., for over thirty (30) years and was a minority shareholder in Defendant, American Bankshares, Inc." Amended

Complaint at ¶ 2 (ECF No. 53). The Amended Complaint alleges that American Bankshares is a West Virginia corporation with its principal place of business in McDowell County, West Virginia. See id. at ¶ 5.

Named as defendants are:

1) James M. Sutton, individually and in his capacity as Chairman of American Bankshares and a member and officer of the Board of Directors. See id. at ¶ 4.

2) Phillip H. Ward, III, individually and in his capacity as Vice Chairman of the Board of Directors of American Bankshares. See id. at ¶ 7.

3) Louis J. Dunham, individually and in his capacity as President and Chief Executive Officer and as a member of the Board of Directors of American Bankshares. See id. at ¶ 8.

4) Jack Baldini, individually and in his capacity as Chairman of the Board of Directors and as a Director of American Bankshares. See id. at ¶ 9.

5) Richard D. Caruso, individually and in his capacity as a Director of American Bankshares. See id. at ¶ 10.

6) Edward W. Orisko, individually and in his capacity as a Director of American Bankshares. See id. at ¶ 11.

7) Robert W. Riggs, individually and in his capacity as a Director of American Bankshares. See id. at ¶ 12.

8) American Bankshares. See id. at ¶ 5.

9) Crowe, an accounting firm retained by American Bankshares "to provide accounting, auditing, business and consulting services" to Ameribank. Id. at ¶ 13.

By Judgment Order entered on March 29, 2011, Crowe was dismissed from the case.

The Amended Complaint asserts ten counts: 1) Negligence; 2) Breach of Fiduciary Duty and Negligence; 3) Oppressive Conduct; 4) Negligent Misrepresentation; 5) Intentional Misrepresentation; 6) Civil Conspiracy; 7) Bad Faith and Fair Dealing; 8) Intentional Infliction of Emotional Distress; 9) Negligent Infliction of Emotional Distress and 10) Outrage. The remaining defendants — Sutton, American Bankshares, Ward, Dunham, Baldini, Caruso, Orisko, and Riggs — have moved to dismiss all counts against them.

## II. Standard of Review

"[A] motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989) (citation omitted) (quoting Conley v. Gibson, 355 U.S. 41, 48 (1957), and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Ibarra v. United States, 120 F.3d 474, 474 (4th Cir. 1997).

4

In evaluating the sufficiency of a pleading, the recent cases of <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007), and <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), provide guidance. When reviewing a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted, a court must determine whether the factual allegations contained in the complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and, when accepted as true, "raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007)(<u>quoting</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); 5 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1216 (3d ed. 2004)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Twombly</u>, 127 S. Ct. at 1969. As the Fourth Circuit has explained, "[a] complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains 'enough facts to state a claim to relief that is plausible on its face.'" <u>Lainer v. Norfolk S. Corp.</u>, 2007 WL 4270847 at *3 (4th Cir. 2007) (<u>quoting</u> <u>Twombly</u>, 127 S. Ct. at 1974).

According to <u>Iqbal</u> and the interpretation given it by our appeals court,

> [L]egal conclusions, elements of a cause of action, and
> bare assertions devoid of further factual enhancement

fail to constitute well-pled facts for Rule 12(b)(6) purposes. <u>See</u> <u>Iqbal</u>, 129 S.Ct. at 1949. We also decline to consider "unwarranted inferences, unreasonable conclusions, or arguments." <u>Wahi v. Charleston Area Med. Ctr., Inc.</u>, 562 F.3d 599, 615 n. 26 (4th Cir. 2009); <u>see also</u> <u>Iqbal</u>, 129 S. Ct. at 1951-52.

Ultimately, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Facial plausibility is established once the factual content of a complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims "'across the line from conceivable to plausible.'" <u>Id.</u> at 1952 (quoting <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. 1955).

Satisfying this "context-specific" test does not require "detailed factual allegations." <u>Id.</u> at 1949-50 (quotations omitted). The complaint must, however, plead sufficient facts to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." <u>Id.</u> at 1950. Without such "heft," <u>id.</u> at 1947, the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with a defendant's liability," <u>id.</u> at 1949, fail to nudge claims "across the line from conceivable to plausible." <u>Id.</u> at 1951 (quotations omitted).

<u>Nemet Chevrolet, LTD v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 255-56 (4th Cir. 2009).

### III. Analysis

Defendants have moved for dismissal for a variety of reasons. The court discusses each of these reasons in turn.

A)   *Failure of Ameribank*

Notably, as the court has earlier recognized, <u>see</u> ECF No. 66, the Amended Complaint goes far beyond the allegations and theories of recovery of the original complaint.   The original complaint alleged oppressive and misleading conduct related to a reverse stock split occurring on or about November 1, 2006. Specifically plaintiffs alleged:

- "That, on or about September 22, 2006, the Board of Directors of Defendant, American Bankshares, Inc., ("The Board"), a West Virginia Corporation, approved a resolution proposing a reverse stock split thereby freezing out all minority shareholders which was orchestrated by the Company's dominant and majority shareholder, Defendant, James M. Sutton.  That the said resolution called for a 100,000 to 1 (one) reverse stock split effectively removing all shareholders from ownership in Defendant American Bankshares, Inc., except for the Defendant, James M. Sutton.  That a similar transaction was also advanced by the Defendants in 2001 and 2004."  Complaint ¶ 19.

- "That the Defendants and each of them have and are `squeezing out' minority shareholders to the economic advantage of the majority thus acting in bad faith and furthering continued oppressive and wrongful conduct resulting in harm and damages to the Plaintiff and others similarly situated."  <u>Id.</u> at ¶ 22.

- "That the Defendants and each of them have wrongfully and oppressively communicated to the minority shareholders of Defendant, American Bankshares, Inc., that they could/would engage in a `squeeze-out' if necessary to further destroy the rights of the Plaintiff and other minority shareholders."  <u>Id.</u> at ¶ 24.

- "That the Defendants and each of them have continuously made threats of a massive reverse stock split (RSS) in a classic `freeze-out' technique whereby the interests of long time minority shareholders in Defendant, American Bankshares, Inc., would be

eliminated/destroyed proximately causing the Plaintiff and others to sustain harm and damages."  <u>Id.</u> at ¶ 26.

- "Wrongfully, the Board and the other Defendants simply acquiesced to Defendant, James M. Sutton's oppressive and wrongful actions.  The Board should have recognized that Defendant, James M. Sutton had conflicts with his position as majority shareholder and protecting the interests of the Plaintiff and other minority shareholders.  Instead, the Board has done absolutely nothing to ensure that the transactions are fair for stockholders.  The Board abdicated its responsibilities by merely rubber stamping the deal/transaction at the behest of Defendant, James M. Sutton.  <u>In so doing, the Board disregarded the fact that the reverse stock split transaction eliminated or will eliminate the Plaintiff's interest as well as the other minority shareholder's interest thereby destroying Plaintiff and others ability to maximize shareholder return</u>."  <u>Id.</u> at ¶ 27 (emphasis added).

- "That the Defendants and each of them have engaged in long continuing patterns of intentional wrongful and oppressive conduct whereby one stockholder is expected to reap all of the benefits of a reverse stock split."  <u>Id.</u> at ¶ 37.

- "That the Plaintiff asserts and alleges that the actions of the Defendants and each of them have been and are now designed to maximize value for one (1) shareholder <u>and to freeze out the Plaintiff and minor shareholders from sharing in the benefits of expected good times</u>.  That the actions of the Defendants have been wholly self-serving with intentions to maximize value for the majority."  <u>Id.</u> at ¶ 55.

In other words, plaintiff Wright was upset with the Board's action in approving the reverse stock split which, according to him, deprived him of his status as a shareholder in American Bankshares.[1]

_____

[1] Wright's complaint was filed prior to consummation of the reverse stock split.  However, the Articles of Incorporation effecting the corporate action became effective on November 1,

Contrast that with the allegations of the Amended Complaint which, in addition to complaining about the reverse stock split, lodges a number of additional allegations and theories of liability relating to the failure of Ameribank. Significantly, the failure of Ameribank was not even mentioned in the original complaint because, as of that filing in 2006, Ameribank was still a going entity. Indeed, the allegations regarding the failure of Ameribank conflict with plaintiffs' theory of the case alleged in the original complaint.

Furthermore, plaintiffs did not seek leave of the court to amend their complaint in this manner and the amendment goes far beyond the direction offered by the court in granting the motion for a more definite statement. For these reasons, those counts are subject to dismissal. See, e.g., Palm Beach Strategic Income, LP v. Salzman, No. 11-2668-cv, 457 F. App'x 40, *43 (2d Cir. Jan. 26, 2012) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeded the scope of the permission granted."); United States ex rel. Atkinson v. P.A. Shipbuilding Co., 473 F.3d 506, 524 (3d Cir. 2007) ("The rejection of an unapproved amended complaint is not an abuse of discretion."); FDIC v. Kooyomjian, 220 F.3d 10, 15 (1st Cir. 2000) (no abuse of

2006. See ECF No. 80-2.

discretion where district court struck new counts alleging new theories of recovery where court granted leave to amend for the "limited purpose" of showing that existing claims were not barred); Benton v. Baker Hughes, No. CV 12-07735 MMM (MRWx), 2013 WL 3353636, *3 (C.D. Cal. June 30, 2013) ("The court's order granted Benton leave to amend only to address the deficiencies in his existing causes of action identified in its order, however. It did not grant Benton leave to add new claims.  Benton was therefore required to seek leave of the court or defendants' written consent to file an amended complaint asserting new promissory estoppel, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and intentional misrepresentation claims.  He did not do so.  The addition of Benton's new claims therefore exceeds the scope of the leave to amend granted, and it is appropriate to strike the newly added claims on this basis."); Maisa Property, Inc. v. Cathay Bank, No. 4:12-CV-066-A, 2012 WL 1563938, *2 (N.D. Tex. May 2, 2012) (granting motion to strike amended pleading where "Plaintiff has not obtained written consent from [defendant] or sought leave of the court to amend its pleading"); DeLeon v. Wells Fargo Bank, N.A., No. 10-CV-01390-LHK, 2010 WL 4285006, *3 (N.D. Cal. Oct. 22, 2010) ("In cases like this one. . . where leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the

amended pleading should be dismissed or stricken."); <u>Farac v.</u>
<u>Sundown Energy, LP</u>, Civil Action No. 06-7147, 2009 WL 2241329, *3
(E.D. La. Jul. 23, 2009) (granting motion to strike portions of
amended complaint where "[t]he Court did not grant leave– nor did
Sundown and Mid-Continent agree– for Isla to expand the scope of
the present lawsuit in its Fourth Amended complaint.  As such,
Isla's Fourth Amended Complaint, to the extent it asserts
entirely new factual allegations, is improper."); <u>Williams v.</u>
<u>Equity Holding Corp.</u>, 245 F.R.D. 240, 245 (E.D. Va. 2007)
(granting defendants' motion to strike where plaintiffs had "gone
outside the scope given by this court to amend their amended
complaint"); <u>Willett v. City Univ. of N.Y.</u>, No. 94 CV 3873, 1997
WL 104769, *2 (E.D.N.Y. Feb. 18, 1997) ("The court's second order
granted plaintiff leave to amend his complaint only with respect
to his First Amendment and defamation claims.  Accordingly, the
court will not consider plaintiff's second, fourth, fifth,
seventh, and eighth claims.").

Therefore, the counts of the Amended Complaint, insofar as
they are grounded in the failure of Ameribank, are **DISMISSED**.

B.  *Reverse Stock Split*[2]

Defendants also argue that plaintiffs' challenges to the reverse stock split are barred by the West Virginia dissenters' rights statute.  According to § 31D-13-1302(a)(4) of the West Virginia Business Corporation Act, "[a] shareholder is entitled to appraisal rights, and to obtain payment of the fair value of that shareholder's shares, in the event of any of the following corporate actions: . . . An amendment of the articles of incorporation with respect to a class or series of shares that reduces the number of shares of a class or series owned by the shareholder to a fraction of a share if the corporation has the obligation or right to repurchase the fractional share so created. . . ."  In addition, the appraisal rights statute prohibits a dissenting shareholder from "challeng[ing] a completed corporate action for which appraisal rights are available unless the corporate action:  (1) was not effectuated in accordance with the applicable provisions of article ten [§§ 31D-10-1001 et seq.], eleven [§§ 31D-11-1101 et seq.] or twelve [§§ 31D-12-1201 et seq.] of this chapter or the corporation's

_____

[2] "A reverse stock split is `the conventional stock split in reverse -- instead of a company amending its charter so as to have more shares authorized and outstanding, the charter is amended so as to reduce dramatically the authorized and outstanding shares.'"  Michael R. Rickman, <u>Reverse Stock Splits and Squeeze-Outs:  A Need for Heightened Scrutiny</u>, 64 Wash. U.L.Q. 1219, 1219 n.1 (1986) (quoting Dykstra, <u>The Reverse Stock Split--That Other Means of Going Private</u>, 53 Chi. Kent. L. Rev. 1, 3 (1976)).

articles of incorporation, bylaws or board of directors'
resolution authorizing the corporate action; or (2) [w]as
procured as a result of fraud or material misrepresentation."
31D-13-1302(d).

West Virginia's highest court, in discussing a prior version
of the statute,[3] agreed that an appraisal rights statute
ordinarily provides the exclusive remedy for dissenting
shareholders.

> Courts have developed several general rules
> regarding dissenter's rights statutes.  The first is
> that ordinarily such a statute provides the exclusive
> remedy for a dissenting shareholder in the absence of a
> showing of fraud, unfairness, or illegality.  See
> generally 18A Am. Jur.2d Corporations § 809.  Although
> our statute does not contain any specific provisions as
> to exclusivity, we agree with the general rule.

Matter of Fair Value of Shares of Bank of Ripley, 399 S.E.2d 678,
682 (W. Va. 1990).

West Virginia is in line with a number of jurisdictions who
also find that appraisal rights provide the exclusive remedy for
dissenting shareholders except under certain narrow
circumstances.  See, e.g., Weber v. Iowa State Bank and Trust Co.
of Fairfield, Iowa, 457 F.3d 857, 859 (8th Cir. 2006) ("Iowa law
specifically states that an appraisal is the sole and exclusive
remedy for a shareholder in the event of a reverse stock
split."); Mitchell Partners, L.P. v. Irex Corp., 53 A.3d 39, 45-

---

[3] West Virginia Code § 31-1-23.

13

47 (Pa. 2012) (holding that statutory appraisal process under
Pennsylvania law provided exclusive remedy to former minority
shareholder unless "fraud, illegality, or fundamental unfairness"
was present); <u>Sound Infiniti, Inc. v. Snyder</u>, 237 P.3d 241, 245
(Wash. 2010) ("We will not allow a dissenting shareholder to
bring a claim outside the appraisal proceeding without a showing
of fraudulent action, as we will not destroy the general
principle enshrined in the statute that the appraisal proceeding
should be the exclusive remedy. A dissenting shareholder cannot
seek identical relief outside the appraisal proceeding by merely
<u>alleging</u> fraudulent conduct.") (emphasis in original).

In this case, plaintiffs have not made specific allegations
that the reverse stock split was "procured as a result of fraud
or material misrepresentation." Although both the Complaint and
the Amended Complaint make general allegations regarding fraud
and misrepresentations, plaintiffs fail to direct the court to
any specific instances of fraud or misrepresentation that would
call the challenged corporate action into question. In the
absence of such a showing,[4] plaintiff's claims arising out of the

_____

[4] As one court observed, "the fraud or fundamental
unfairness exception may not be invoked lightly. . . . It is
also well established elsewhere, and should pertain in
Pennsylvania, that mere inadequacy in price is not sufficient to
implicate the exception." <u>Mitchell Partners, L.P. v. Irex Corp.</u>,
53 A.3d 39, 47 (Pa. 2012); <u>see also</u> 15 <u>Fletcher Cyc. Corp.</u> § 7165
("Allegations of fraud should be scrutinized to make sure the
conflict is not merely one concerning valuation, which is
properly handled in an appraisal proceeding."); James D. Cox and

reverse stock split are barred by West Virginia Code § 31D-13-1302(d).

Furthermore, to the extent that plaintiffs allege that they may avoid the exclusivity of the dissenters' rights statute by relying on <u>Masinter v. Webco Co.</u>, 262 S.E.2d 433, 438 (W. Va. 1980), that argument is without merit. Under West Virginia law, "the majority stockholders in a corporation owe a fiduciary duty to the minority, as do the officers and directors . . . ." <u>Masinter v. Webco Co.</u>, 262 S.E.2d 433, 438 (W. Va. 1980). West Virginia also recognizes an "oppressive conduct exception to the general rule that a corporation has complete control of its affairs." <u>State ex rel. Smith v. Evans</u>, 547 S.E.2d 278, 283 (W. Va. 2001). According to the West Virginia Supreme Court of Appeals, "[a] claim of a freeze-out rests on the wrongful denial by the majority shareholders of the legitimate claims or expectations of a minority shareholder." <u>Masinter</u>, 262 S.E.2d at 442.

Plaintiffs' invocation of <u>Masinter</u> nothwithstanding, a careful reading of plaintiffs' complaint makes clear that the oppressive conduct complained of is related to the reverse stock

---

Thomas Lee Hazen, 4 <u>Treatise on the Law of Corporations</u> § 22.27 (3d ed. 2011) ("The courts are fairly consistent in refusing to allow an exception to the appraisal statute when the sole complaint is that the merger does not offer a fair price for the dissent's shares.).

split – an action that is allowed by law.[5]  Accordingly, <u>Masinter</u>

is distinguishable from this case.  As the West Virginia Supreme

Court of Appeals has stated in the context of protecting a

minority shareholder's rights in the merger context:

> We have never agreed with the business purpose
> doctrine because attempting to infer the motivations
> behind a majority stockholder's buyout of minority
> shares is like trying to catch the wind in a net.  In
> the often clashing cross-purposes and constant friction
> of haggling and dickering that characterize a
> corporation, it is perfectly reasonable for a majority

---

[5] As one court noted:

> There is broad consensus that a reverse stock
> split may validly be used for the sole purpose of
> removing minority shareholders, subject to the
> restriction that the removal of the minority
> shareholders must not constitute a breach of fiduciary
> duty on the part of the majority shareholders or
> directors of the corporation.  <u>See</u>, <u>e.g.</u>, <u>Laird v.
> I.C.C.</u>, 691 F.2d 147, 151 (3d Cir. 1982) (finding that
> a reverse stock split is legal under Missouri law);
> <u>Goldman v. Union Bank & Trust</u>, 765 P.2d 638 (Colo. App.
> 1988) (deciding that the Colorado Corporation Code
> authorized a reverse stock split that 'froze out'
> minority stockholders); <u>FGS Enters., Inc. v. Shimala</u>,
> 625 N.E. 2d 1226 (Ind. 1993) (ruling that the Indiana
> General Corporation Act permits reverse stock splits in
> which corporation acquired fractional shares); <u>Lerner
> v. Lerner Corp.</u>, 132 Md. App. 32, 750 A.2d 709, 719
> (Md. Ct. Spec. App. 2000); <u>see also</u> Elliot M. Kaplan &
> David B. Young, <u>Corporate 'Eminent Domain': Stock
> Redemption and Reverse Stock Splits</u>, 57 UMKC L. Rev.
> 67, 74 (1988) ("No jurisdiction has any per se rule
> against squeeze-outs by means of reverse stock splits
> or otherwise. . . ."). It is clear that the use of a
> reverse stock split to redeem minority shareholder
> interests is a powerful weapon in the majority
> shareholder's arsenal. . .   While the fairness of this
> approach is open to debate, these policy decisions are
> within the province of the Legislature.

<u>U.S. Bank N.A. v. Cold Spring Granite Co.</u>, 802 N.W. 2d 363, 371
(Minn. 2011).

shareholder to rid himself of minority shareholders who
he perceives may compromise fundamentally that
corporation's interests.  Consequently, our rule in
West Virginia is that when a majority stockholder or
majority stockholders seek to effect a corporation's
merger, they may do so for any purpose whatsoever, so
long as the terms tendered to the minority stockholders
accurately reflect the fair market value of the
minority interest.

Persinger v. Carmazzi, 441 S.E.2d 646, 654 (W. Va. 1994).

Given that plaintiffs have failed to make sufficient

allegations, pursuant to Twombly and Iqbal, that would avoid the

exclusivity provision of § 31D-13-1302(d), the claims relating to

the reverse stock split are dismissed.

C.   *Additional Considerations*

1.   *Count 5: Intentional Misrepresentation*

As to the intentional misrepresentation claim, plaintiff

alleges that defendants:

- "conducted, helped with or provided assistance in
  the preparation of fraudulent and/or negligent
  audits by failing to uncover the true
  assets/liabilities of Defendant American
  Bankshares, Inc., and Ameribank, Inc. and/or
  closing their eyes to an internally generated
  auditing system."

- "fraudulently and/or negligently failed to properly and
  accurately disclose the true financial condition of
  Defendant American Bankshares, Inc. and Ameribank,
  Inc.; failed to disclose material information; and
  assisted in the publication and dissemination of false
  and misleading information, thereby conspiring and
  colluding with the other Defendants and breaching a
  fiduciary duty to the Plaintiff and others."

- "based upon information and belief breached a fiduciary
  duty to Plaintiff and others by misrepresentations,
  fraud, negligence, failure to avoid conflicts of

17

interest to eliminate oppression and conspiring, planning and colluding to eliminate minority shareholders including Plaintiff and others."

- "breached a fiduciary duty to Plaintiff by not fully disclosing financial information and truthfully keeping Plaintiff and others advised of the true intentions of the majority shareholder, namely, Defendant James M. Sutton who operated Defendants' American Bankshares, Inc. and Ameribank, Inc. as his alter ego."

- "have engaged in long continuing patterns of intentional wrongful and oppressive conduct whereby one stockholder is expected to reap all of the benefits of a reverse stock spit. As a direct and proximate cause of the collective, long continuing, oppressive actions of the Defendants, the Plaintiff and others have been and will be damaged in that Plaintiff and others will be wrongfully deprived of the full value of their American Bankshares, Inc., investment. As a result of Defendants' actions, Plaintiff and others are entitled to recover all damages; suffered past, present and post as a direct and proximate result of Defendants' wrongful and oppressive actions."

- "[engaged in] oppressive conduct . . . [that] includes but is not limited to: a) freeze out; b) squeeze-out; c) withhold (held) dividends; d) siphoning off of corporate earnings; e) utilizations of controlling position to obtain special advantages; f) retention of disproportionate benefits of majority shareholders; g) buyout of oppressed investors stock at less than fair value; h) caused Plaintiff and others to relinquish stock at inadequate prices; and i) selfish ownership."

- "That the wrongful acts of the Defendants, including the misrepresentations made by the Defendants. . . were intentional, willful and wanton, and were arbitrarily made without any consideration to the legal rights of Plaintiff and others and as such constitutes predatory practices that have occurred over a long and continuous period of time proximately causing the Plaintiff and others to sustain harm, injury and damages."

- "engaged in a pattern of intentional misrepresentation and through oppression and deceit, . . . misrepresented material facts concerning the true financial condition of the

American Bankshares, Inc., and that said
misrepresentations were made with scienter with a
purposeful intent to induce the Plaintiff and
others to act on said intentional
misrepresentation or to purposefully induce the
Plaintiff to refrain from acting because of the
misrepresentation made by Defendants and that as a
direct and proximate result of the Defendants'
intentional misrepresentations made through fraud,
oppression and deceit the Plaintiff justifiably
relied on the misrepresentations . . . provided to
the press about the true financial condition of
Ameribank, Inc./American Bankshares, Inc., and as
a result of the intentional misrepresentations
made by the Defendants the Plaintiff and others
have sustained financial loss, harm and damages."

- "intentionally misrepresented the American Bankshares,
  Inc./Ameribank, Inc.'s profits, assets, financial
  reports and overall financial condition of said bank
  and said misrepresentations whether intentional or
  negligent, proximately and directly caused the
  Plaintiff and others to sustain financial loss, harm
  and damages as well as emotional stress, loss of
  enjoyment of life, mental anguish, aggravation,
  annoyance and inconvenience."

Amended Complaint ¶¶ 28, 33, 37, 38, 55, 56, 69, 70, and 71.

Plaintiffs' intentional misrepresentation claim is essentially a

claim for fraud.  See Fifth Third Bank v. McClure Properties,

Inc., 724 F. Supp.2d 598, 610 (S.D.W. Va. 2010) ("Fraud includes

intentional misrepresentation and the elements required to prove

each tort overlap."); Gerver v. Benavides, 530 S.E.2d 701, 705

(W. Va. 1999) ("Actual fraud is intentional, and consists of an

intentional deception or misrepresentation to `induce another to

part with property or to surrender some legal right, and which

accomplishes the end designed.'").

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Plaintiffs' intentional misrepresentation claim is governed by Rule 9(b). See <u>Felman Production, Inc. V. Bannai</u>, 2007 WL 3244638, *7 (S.D.W. Va. 2007). The Fourth Circuit has concluded that "a complaint which fails to specifically allege the time, place and nature of the fraud is subject to dismissal on a Rule 12(b)(6) motion." <u>Lasercomb America, Inc. v. Reynolds</u>, 911 F.2d 970, 980 (4th Cir. 1990); <u>see also</u> <u>Holland v. Cline Brothers Mining Co.</u>, 877 F. Supp. 308, 318 (S.D.W. Va. 1995).

Plaintiffs' intentional misrepresentation claim is not pled with the particularity required by Rule 9(b). The claim is stated wholly in conclusory form and fails to put defendants on notice of the time, place, or nature of the alleged fraud. For these reasons, the intentional misrepresentation claim will be dismissed.

> 2. *Counts 8 and 10: Intentional Infliction of Emotional Distress and Outrage*

In order for a plaintiff to prevail on a claim for intentional infliction of emotional distress, four elements must be established:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain

emotional distress would result from his conduct; (3)
that the actions of the defendant caused the plaintiff
to suffer emotional distress; and (4) that the
emotional distress suffered by the plaintiff was so
severe that no reasonable person could be expected to
endure it.

Tomblin v. WCHS-TV8, 2010 WL 324429, *10 (S.D.W. Va. 2010)

(quoting Philyaw v. Eastern Associated Coal Corp., 633 S.E.2d 8,

Syl. pt. 2 (W. Va. 2006)).  Intentional or reckless infliction of

emotional distress is the same thing as the tort of outrage.

Lovell v. State Farm Mutual Ins. Co., 584 S.E.2d 553, 557 n.10

(W. Va. 2003); see also Travis v. Alcon Laboratories, 504 S.E.2d

419, 424 (W. Va. 1998) ("Intentional or reckless infliction of

emotional distress, also called the `tort of outrage,' is

recognized in West Virginia as a separate cause of action.").

"[T]rial courts should first examine the proof presented by

the plaintiff to determine if the defendant's conduct may legally

be considered "extreme and outrageous."  O'Dell v. Stegall, 703

S.E.2d 561, 594 (W. Va. 2010).

In evaluating a defendant's conduct in an intentional
or reckless infliction of emotional distress claim, the
role of the trial court is to first determine whether
the defendant's conduct may reasonably be regarded as
so extreme and outrageous as to constitute the
intentional or reckless infliction of emotional
distress.  Whether conduct may reasonably be considered
outrageous is a legal question, and whether conduct is
in fact outrageous is a question for jury
determination.

Id.

Plaintiffs have failed to state a prima facie case for intentional infliction of emotional distress. First, the conduct complained of, i.e., the reverse stock split, is not the type of "atrocious," "intolerable," or "outrageous" behavior that exceeds the bounds of decency. Second, plaintiffs cannot show that any emotional distress suffered by them was so severe that it could not be endured by a reasonable person. See, e.g., Brown v. City of Fairmont, 655 S.E.2d 563, 569 (W. Va. 2007) (holding that improper disbursement of pension benefits to former wife did not make out a claim for intentional infliction of emotional distress because while "resulting financial consequences were doubtless upsetting and worrisome," it did not "cause the kind of emotional upheaval that no reasonable person could be expected to endure."). For these reasons, the claims for intentional infliction of emotion distress and outrage are dismissed.

3.    *Count 9: Negligent Infliction of Emotional Distress*

A defendant may be held liable for negligently causing a plaintiff to experience serious emotional distress, after the plaintiff witnesses a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent conduct, even though such distress did not result in physical injury, if the serious emotional distress was reasonably foreseeable. Arbogast v. Nationwide Mutual Insurance Co., 427 S.E.2d 461, 466 (W. Va. 1993); Heldreth v. Marrs, 425 S.E.2d 157

(W. Va. 1992).  A claim for negligent infliction of emotional distress "is applicable only to limited situations `premised on conduct that unreasonably endangers the plaintiff's physical safety or causes the plaintiff to fear for his or her physical safety.'"  <u>Tomblin v. WCHS-TV8</u>, 2010 WL 324429, *10 (S.D.W. Va. 2010) (quoting <u>Brown v. City of Fairmont</u>, 655 S.E.2d 563, 569 (W. Va. 2007)).

This is not a case pertaining "to the threatened health or safety of the plaintiff or a loved one of the plaintiff." <u>Brown</u>, 655 S.E.2d at 569.  Given that no such conduct is alleged herein, dismissal of the negligent infliction of emotional distress claim is appropriate.

## IV.  Conclusion

For the reasons discussed above, the motions to dismiss are **GRANTED**.  The Clerk is requested to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 5th day of July, 2017.

ENTER:

David A. Faber
Senior United States District Judge